IN RE ESTATE OF MARTHA E. CONWAY.
LAKE CITY BANK & TRUST COMPANY, APPELLANT.[1]

February 26, 1932.

No. 28,705.

*John R. Foley* and *Lawrence R. Lunde,* for appellant.
*John W. Murdoch,* for respondent.

HILTON, J.

Martha E. Conway, aged 58, died on June 4, 1929, at Lake City, Minnesota. She was unmarried and had been a school teacher for many years. At the time of her death she was the owner of real estate and mortgages, all aggregating in value about $50,000. She left surviving a brother, Jesse F. Conway, who was a dentist, aged

[1]Reported in 241 N. W. 42.

48 years; an invalid mother, 78 years of age, and three minor children of a deceased brother. She had inherited a considerable portion of her property from the estate of an uncle, George Riley, whose death preceded hers by about three months. The probate court admitted her will here involved to probate. On appeal the district court found that the will had been properly executed and that the testatrix at the time of its execution was of sound and disposing mind and memory and free from undue influence or restraint. This appeal is from an order denying contestant's motion for a new trial.

Martha Conway had been in good health until Tuesday forenoon, April 16, 1929, when she suffered a stroke (cerebral hemorrhage) which caused the paralysis of her right side. She was attended by a physician who had known her for over 30 years, and a trained nurse, each of whom was a subscribing and attesting witness to the contested will made by her on Saturday, April 20, 1929. By the terms of the will (a short one of only 18 lines) all of her property, after the payment of her just debts and funeral expenses, was given, devised, and bequeathed to her brother Jesse, who was named as executor in the will.

The Lake City Bank & Trust Company, as guardian of the estate of Mary Conway, incompetent (the mother), unsuccessfully contested the will in probate court. After the appeal from that court to the district court, Mary Conway died, and the trust company was appointed administrator of her estate and took this appeal. Contestant claimed that testatrix was not of sound and disposing mind and memory at the time the will was made and that it was executed under undue influence. We now refer to matters disclosed by the evidence.

In the afternoon of Tuesday, the day of the stroke, a local attorney at Lake City, who had attended to legal matters for Martha and had been her attorney in defending against the contest of the Riley will, came to the house of Martha and there prepared a will which was executed in his presence and with the two subscribing and attesting witnesses above referred to. Martha was not then

able to write her name with her right hand, but signed it with an "X." This will is referred to as "the emergency will."

Although being of the opinion that the emergency will was properly executed and that Martha was in every way qualified to make it, the attorney thought it advisable that another will be executed and signed by Martha with her name. He requested the physician to advise him as to the progress of Martha's recovery from day to day. The physician did so. She improved each day. The attorney prepared a will exactly like the former one, and on Saturday, April 20, it was executed with the same attesting witnesses; they, together with the attorney, testified that Martha was then of sound and disposing mind and memory. Their testimony was explicit, strong, and convincing and amply justified the court in reaching the conclusion in accord therewith. The will was read over to Martha and its provisions explained; she orally expressed her assent thereto.

Several times in previous years Martha had told the attorney that she wanted to make a will and that she would come around to his office sometime to do it. This desire was more evident immediately after the death of her uncle. In March she stated to the attorney:

"I must have my will made. Jess is the only one that is left now to look after the property. Mother isn't able to look after her property, and I am satisfied that Jess will look after mother, so that I am going to leave everything to Jess. I will be down to see you."

On Monday preceding the day of the stroke the attorney was at her house, and she stated to him:

"I must have my will fixed up. Now, that must be attended to, and I will be down to see you very soon. I will have to leave all— now, I want Jess to look after all this and to have all this property and to look after mother's. He will do just as I want to do and will look after mother."

It is not at all strange that under such circumstances the attorney should have done as he did.

The suggestion that Martha did not know and have in mind the property owned by her because she did not enumerate it is wholly without merit. Under the circumstances it was not necessary. Right along, prior to the stroke, she was in close contact with her business affairs; incidents relative to that knowledge frequently appear in the evidence. When the attorney told her on Thursday, April 18, that the Riley litigation had been settled, her reply was, "That is good." The intimation that Martha had forgotten about her mother and the duty she owed her is not warranted. Certain statements made by her on the day the will was executed show that she had her mother in mind.

Appellant offered no evidence on either ground of contest, contenting itself with cross-examination of proponent's three witnesses. There was no evidence from which any inference of undue influence could be drawn. The burden was upon contestant to establish it.

A fuller recital of the evidence is not necessary. A fact issue was before the court for determination; there was abundant evidence justifying it in determining that neither of contestant's grounds of objection was well taken. That conclusion must stand. 1 & 6 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 411, 10212.

Affirmed.